Good morning. May it please the Court, Mayor Acosta, Jr. appearing on behalf of the petitioner pro bono. In this case, with the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Your Honor, in this case, the agency first committed an error when it declined to review the aggravated felony issue. It is true that petitioners argued before the removal as opposed to challenging the issue of removability. Unfortunately, although the argument wasn't crafted perhaps the way it should have been, nonetheless, the Board was put on notice that there was a challenge to the aggravated felony issue. In addition, petitioner did make the effort to put the Board on notice that it was raising the issue of the Las Casarillas. I understand that the Board and that this Court has held that in the context of a moral turpitude offense. At the time of a conviction, if the sentence that may have been imposed was 365 days, notwithstanding any changes by the legislature, that change does not apply to what the maximum sentence is at the current time, regardless of the fact that the legislature intended for 18.5 of the Penal Code, which is what reduced from I agree with you that the Board should not have relied on forfeiture because the aggravated felony issue was embedded in both admissibility and then diseligibility for cancellation. Aren't all aspects of that issue controlled now by Ninth Circuit precedent? Respectfully, no, for two reasons. I believe that in both the Velazquez-Rios decision from the panel of this Court, as well as the matter of Velazquez-Rios decision from the agency, both cases in the footnote made sure to specify that their holding was specifically limited to issues, to removability regarding the moral turpitude offense because what they focused on was the language of the statute. But a term of one year or more may be imposed. That is, we hold that those federal law standards cannot be altered or contradicted retroactively by state law actions and cannot be manipulated after the fact by state laws modifying sentences that at the time of conviction permitted removal or that precluded cancellation. That seems like a broad holding that squarely governs this case. But again, I believe respectfully, if there's one lesson that we've learned from the Supreme Court, every single word in the statute, meaning we have to look at the plain language of the statute, there's a reason why Congress wrote the term may be imposed as part of the moral turpitude offense removal category as opposed to the aggravated felony. The aggravated felony provision specifically says the actual term of imprisonment that was imposed. In this case, I would argue that clearly you either have to have said... What was the sentence? That's the problem. Respectfully, I think the sentence was 15 days. That was the effective sentence once the suspension was applied, but the sentence itself... Agreed, Your Honor. And one thing that I wish that perhaps prior counsel could have raised is that the government only submitted a plea form which indicated that the sentence was 350 days, but then it has a section that specifically says suspended or stayed. And as I'm sure the court is aware, there's a difference between suspending a sentence and staying in position of its execution. In addition, the FBI rapture that they submitted is also somewhat inconclusive. And given that the government would have bore the burden to prove by clear and convincing evidence that the petitioner was removable, I wish those arguments would have been raised. They weren't. But, Your Honor, I would argue that the BIA is required to review the issue of whether or not a conviction is an aggravated felony de novo. So there's nothing that precludes the board from having reviewed it and decided whether or not the evidence was under de novo review. The standard of review for an aggravated felony challenge, Your Honor, is a de novo. It's clear that it was raised before the BIA in both the notice to appeal and the BIA brief. The BIA, however, almost seems to skip over it by making the assertion that because the arguments were raised in the context of the cancellation of removal eligibility issue that somehow they were now precluded from being able to review it. And I don't believe that that is the case. I know that the court has made a point in prior cases, especially in cases involving a petitioner immigrant who was unrepresented during the removal proceedings before the court. I know he had some pro bono attorneys that would make an appearance just for the court hearing, but he never had an attorney until he got to the BIA. But I believe that, at the very least, the board should have addressed the issue. So before we even perhaps touch the legal issue of whether or not Velazquez-Rios is distinguishable, whether or not the definition of whether or not 18.5 should apply in this context. Is that the only issue that's left? I mean, do you concede that a decision in Banuelos Ajon controls the issue of the categorical match? Unfortunately, yes. I will concede that there have been several decisions, most recently I believe Carrillo, which have held that 17.5 is both categorically a crime of domestic violence and also a crime of violence. I obviously would take notice that those cases raise arguments regarding the potential mental state and that that could potentially put it under a Leo Cal versus Ashcroft. But I do recognize that the Ninth Circuit has rejected those arguments, which is why I believe that the focal point. The only issue left is whether or not the sentence was for a year or more. I think it's two. One is that issue. The second one is whether or not the board committed an error by ignoring it, because that's the problem that we have is that the board didn't substantively look at that argument. They essentially just said, well, in our opinion, you raised it in the context of a cancellation or removal application, so we won't look at it. Correct. I mean, and normally under Chenery, we cannot reach and ground that the BIA did not reach, but there's a small exception to Chenery when the agency has no discretion and one result is dictated. And so isn't this that case? Because the language I just read from Alaska seems to say, California can't change this retroactively for federal immigration purposes, and his sentence at the time was a year. Again, I understand the court's point, but I would point out that in the matter of Velazquez-Rios, as well as Velazquez-Rios from this court, both cases dealt with a different removability section. So I think that that's the first step that the court should take. There's a difference between saying 365 days may be imposed as opposed to what was the wrong has held that you cannot, quote, reduce a sentence, and that that will have validity for immigration purposes. I recognize that vacating a conviction itself is subject to certain guidelines to show that there's a substantive or procedural due process violation, but the board has always been very flexible when it comes to reducing a sentence. And our argument would be that here, in the context of an aggravated felony, again, where the government bears a burden of proving clear and convincing evidence that an immigrant is removable, we would argue that the term of imprisonment was retroactively changed to 364 days. Otherwise, you're going to be faced with a certain legal, nonsensical result that someone is being found to have been sentenced to 365 days at the time of their removal order when, in fact, the law had been changed and the maximum sentence was 364 days. I concede that if you look at a statute that uses the word may be, you're essentially inviting an inquiry into what happened at the time of the conviction. Term of imprisonment means now. It means at the time that the board looks at the removal order. And our argument would be that 16.5 should apply for removal. Yes. All right. Thank you. We'll hear now from Mr. Joseph. Good morning, Your Honors. May it please the Court, Bernard Joseph, the Attorney General of the United States. Here in this case, it's clear that the Court should deny the petition for review. The petitioner is statutorily ineligible for cancellation of removal because his 2002 conviction under CPC 273.5a, combined with his sentence of 365 days, makes it an aggravated felony crime of violence. Before you go further, just to clarify, at least based on your brief, you're not trying to justify the BIA's decision about finding a forfeiture? The petitioner did not raise anything except the question of whether or not it was removed. He didn't raise the question of whether it was removable. He waived it. Thus, the board didn't reach the other decisions because it didn't lead to the fact that he was an aggravated felony, making him statutorily ineligible for cancellation of removal. At least how I read your brief, you weren't really defending the BIA's decision, saying, well, he forfeited this argument, and therefore, we're not going to address anything. I'm sorry, I'm— Are you—at least based on your brief, I didn't get the sense that you were trying to defend the BIA's reasoning based purely on forfeiture. No, not purely on forfeiture, Your Honor. Do you read the BIA's decision as implicitly making a substantive finding that this was an aggravated felony and that the sentence was at least one year? Well, I think if you look at the record, which the BIA does when it's reviewing things, the first immigration judge found that it was an aggravated felony and found it because, based on court precedent, that 273.5A was for willful infliction of a corporate injury. She looked at the sentencing that the petitioner received, which was 365 days, which under the INA makes it for a term of a year. Therefore, when you combine those two, it's a crime of violence, and he was sentenced to 365 days. It's an aggravated felony, and the immigration judge looked at that. The second immigration judge who had the case said that he reviewed the transcripts and the recordings, and he also found that 273.5, combined with the 365-day sentence, qualifies that as an aggravated felony, a crime of violence. The board mentioned both in its decision. But then when it gets to the reasoning after it just goes through the procedural history, it says the respondent raises no challenge to the finding of removability, which triggers the bar to cancellation of removal under Section 240A, A3 of the Act. Without any argument as to why the finding of removability, which remains unchallenged, would not bar eligibility, we see no basis to remand the record for further examination of the respondent's eligibility for leave. And that's all they say. So all that says is that because you didn't challenge removability, and removability has the aggravated felony finding embedded within it, we're not going to look at anything else, and we're done. And I don't see anything that's a substantive analysis of aggravated felony in that. That's a pure forfeiture gotcha analysis. Well, I think it's, as Joseph said, it's implicit in the decision that the board, one, the board considers the record. I mean, I think it's required to do that. So I don't think that it doesn't make sense to say the board considers the record and then the board says, well, fine, you didn't argue that you're not removable after the record clearly establishes you're removable. But that's what they said. The only explanation they had was that. And if he's removable because he committed an aggravated felony, crime of violence, and he was sentenced to 365 days, which the record demonstrates that's the case, even if this court takes it up on or the court says maybe this is a deficient decision, which the government contends it's not, when it goes back, it'd be futile because this court's precedent clearly establishes that his conviction under CPC 273.5 and his sentence of 365 days disqualifies him for statutory eligibility for cancellation of removal. So your position is that if we disagree with you, that there is a substantive analysis here. And if we read this decision as relying just on forfeiture, we don't have to do a Chenery remand because this case fits within the Chenery exception where the outcome is completely foreordained. I agree, Your Honor. I think if you look at the court's precedent when it looks at 273.5 and also the court's precedent when you look at 18.5, if you send it back, the result is the same. So even if you say this decision is deficient, if you send it back to the agency and the agency says, fine, we'll send it back to the immigration judge, the immigration or if the board just says, okay, let me look at what the immigration judges did. They both analyzed this section. So I'll say they analyzed this section, even though, as counsel can see, the petitioner never raised anything, never raised the removability, which is the issue here. Is the petitioner removable? And is he removable because he's statutorily ineligible for cancellation of removal, which is the only form of relief or protection he sought? What's your response to his argument that Velazquez-Rios is distinguishable because it dealt with a crime involving moral turpitude in which the issue is the statutory maximum and this deals with the actual penalty and, therefore, it doesn't control it? Well, I think if you look at the INA, the fact that he was sentenced to 365 days and he was sentenced to 365 days, there's no dispute there. He may have only served 15 days, but he was sentenced to 365 days. That qualifies as a term of up to one year. So it qualifies as being an aggravated felony. And if you look at the language in the statute, whether it's, you know, Section 1152, I think, or 1182A2 deals with the CIMTs and 1227A3 deals with, or A23 deals with aggravated felonies. The language is the same or similar. And it requires you to look at the sentence at the time of the conviction. In 2002, he was sentenced to 365 days. And combined with being a domestic or a crime of violence, that makes it an aggravated felony. So it doesn't matter in this case whether Velazquez-Rios, which I don't think could be read as narrowly as the petitioner would like it to be read, is limited only to aggravated felonies or just crimes involving moral turpitude. If you look at the statutory language, it applies also to aggravated felonies. In the same clause, it deals with the CIMTs. It also deals with 1227A2, which includes aggravated felonies. Are you aware of any case in which we've applied the holding of Velazquez-Rios in the context of an aggravated felony? Let's go to the documents. Velazquez-Rios is an aggravated felony? Right, Velazquez-Rios was a case involving a crime involving moral turpitude. He's claiming it does not, its holding does not apply to an aggravated felony. And so my question is, do we have a case where we've actually done that? If you know of one. The government is not currently aware, but certainly if the court would like, can certainly look for that and submit it. Okay, all right, thank you. Are there any further questions? In light of this court's decision in Van Wille ION, the 273 is categorically a crime of violence combined with the sentence of 365 days, making it an aggravated felony, which disqualifies him. Petitioner for cancellation of removal for non-permanent residence, combined with the holding of Velazquez-Rios, that section CPC-18-5 has a retroactive effect on his sentence. The court should deny the petition for review. Thank you, counsel. I will hear the report from Mr. Acosta. Thank you. Briefly, Your Honors, I am not aware of a case that has applied Velazquez-Rios or considered in the context of an aggravated felony, but I do insist that if the court was to review both Velazquez-Rios from the board as well from the panel, they both make certain to narrow the decision in the context of may be imposed. With respect to the argument from my colleague that it's the same language, it's clearly not. And I think, again, the Supreme Court in Pereira has cautioned this court, as well as other courts, to take a look at what the language that is used actually says. There is no question that at this point the maximum sentence that could be imposed for this conviction is 364 days. That is a certainty. The court should look at the case in terms of what the sentence imposed would be today, not what may have been imposed at the time of the conviction. The last point I would make is somewhat inconsistent. I mean, just like last week, the Supreme Court spoke about, was it an armed criminal? At which statute it was. It basically said, well, we look back to the time of the offense. In this case, the time of the offense was 2002, so the fact that the California legislature may have done something since then, I don't understand conceptually why that should change things. What he did at the time was a crime that resulted in the sentence that he got. Now, granted, you got the suspension, but I just don't understand conceptually why it is we're supposed to go back into history. I understand, Your Honor, and if I may answer the question, please. The problem is that the other side of the coin, also conceptually, doesn't make sense. How does the petitioner go back to a state court to request reduction of a sentence when the maximum sentence is 364 days? I mean, at some point we're also going to be caught in a situation where the state court is going to say, well, how can we give you the remedy you're asking us for when there is no 365-day sentence anymore? It's 364 days. The legislature has already spoken to reducing it retroactively. So what you're left with is potentially what? Asking petitioners to file a motion to vacate because they didn't understand the consequences of the plea? You're not going to be able to show prejudice because the legislature has already reduced the sentence maximum to 364 days. I would just make the point that if the court doesn't want to maybe get into that muddy water of whether or not Velazquez-Rios should apply in the aggravated felony context, I think that in this case the board really dropped the ball. Whether you label it in terms of application for relief or removability, there's one undeniable truth. The petitioner exhausted the issue that his conviction was not an aggravated felony, and the board failed to address it. If I could just ask a logistical question. You're representing your client pro bono. Are you going to represent him on hypothetical remand before the BIA? Absolutely. Because in the past it seems like yet a single day a pro bono conflict got shuffled around and not much was done. Right. I've taken an interest in this case, and I've spoken to the petitioner, and I've given him my word that I'll follow through until the case is concluded. Great. Thank you. Thank you, Attorney General. I thank both sides for their arguments in this matter, and the case just argued will be submitted.
judges: CLIFTON, COLLINS, LEE